UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEGRA NETWORK LLC and ALLEGRA
HOLDINGS LLC,

    Plaintiffs,

v.

J. MICHAEL CORMACK and SHERRIE L.
CORMACK,

    Defendants.

_____/

Case No.  11-13087

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

This matter comes before the Court on Plaintiffs Allegra Network LLC and Allegra Holdings LLC's motion for a preliminary injunction.  Plaintiffs seek to enforce a non-competition provision and other post-termination obligations contracted for in a franchise agreement entered into between Plaintiffs and Defendants J. Michael Cormack and Sherrie L. Cormack.  For the reasons set forth below, Plaintiffs' motion is GRANTED.

**I.**    **Facts**

Plaintiffs develop and distribute a full range of digital and conventional offset printing, large format printing, marketing services, copying, electronic pre-press, bindery, and mailing services.  These services are distributed throughout the United

States through authorized franchisees, who operate their franchised businesses pursuant to written franchise agreements with Plaintiffs. On October 4, 2006, Plaintiffs and Defendants entered into a franchise agreement ("Agreement") to operate an Insty-Prints Center in Fayetteville, Arkansas for a term of twenty years.

The Agreement contained a covenant not to compete, where Defendants agreed that upon termination or expiration of the Agreement, they would not have:

> [A]ny direct, or indirect interest as an owner (whether of record, beneficially, or otherwise), investor, partner, direct or, officer, employee, consultant, representative, or agent in any Competitive Business located or operating (a) within a ten (10) mile radius of [659 Appleby Road, Fayetteville, Arkansas] and (b) within a five (5) mile radius of any other Center in operation.

(Agreement 24.) The covenant not to compete provides that "[i]f any person restricted by this Subsection refuses voluntarily to comply with these obligations, the two (2) year period for that person will commence with the entry of a court order enforcing this provision." (Id.)

The Agreement also provides a number of obligations upon its termination or expiration under a "De-Identification" heading. Some of these state that Defendants: (1) May not identify themselves as a current or former Center or as one of Plaintiffs' current or former franchise owners or use any marks, symbols, or trade names that suggest a connection or association with Plaintiffs; (2) must deliver, at Defendants' expense, all signs, marketing materials, or anything containing any mark or identifying feature relating to Plaintiffs and allow Plaintiffs to remove those items; (3) must deliver to Plaintiffs all customer lists; (4) must make the alterations Plaintiffs specify in the Operations Manuals, at Defendants' expense, to distinguish the premises from its former appearance and from other centers in order to prevent public confusion; (5) must

notify the telephone company of the termination of Defendants' right to use any numbers associated with Plaintiffs' marks, pay any outstanding balance, and authorize the transfer of any numbers to Plaintiffs; and (6) must give Plaintiffs evidence of their compliance with these obligations. (Id. at 23-24.)

In the event the Agreement terminates, Defendants must also cease using any of Plaintiffs' confidential information and return any copies of the Operations Manuals and any other confidential material Plaintiffs loaned to Defendants. (Id. at 24.)

Under the Agreement, Defendants agreed to pay Plaintiffs monthly royalty fees and marketing fund contributions. At some point in 2009 or 2010, Defendants stopped making these payments to Plaintiffs. Plaintiffs allege that Defendants have not made these payments since January 2009 and Defendants state that they stopped making payments in sometime in late 2010. (Pl. Ex. 102; Defs. July 9, 2012 Letter.)

On April 1, 2011, Plaintiffs sent Defendants a letter advising Defendants that they were in default under the Agreement for failure to make royalty and advertising fund payments, failure to report royalty figures, and failure to use only Plaintiffs' marks as the sole identification of their center. (Pl. Ex. 102.) Plaintiffs demanded that Defendants cure their default and warned that failure to do so may result in the termination of the Agreement. The letter listed the post-termination obligations with which Defendants would be obligated to comply, in the even the Agreement terminated. (Id.) On May 18, 2011, Plaintiffs sent Defendants a letter terminating the Agreement for failure to cure the defaults listed in the April 1, 2011 letter. (Pls. Ex. 103.) This letter also listed the post-termination obligations Defendants agreed to under the Agreement. (Id.) Defendants state that they never received either letter from Plaintiffs. (Defs. July 9, 2012 Letter.)

On July 15, 2011, Plaintiffs filed this action, alleging that Defendants failed to comply with their non-competition covenant and post-termination obligations by operating a competitive business at the exact location of their former franchised Insty-Prints Center, continuing to use the Insty-Prints Marks and Plaintiffs' goodwill, advertising their competitive business as a former Insty-Prints franchise, and continuing to use the same telephone number.  (Compl. ¶¶ 37-40.)  Defendants continue to operate a competitive business, named "Hog Country Media," from the location of the previous Insty-Print franchise.  Plaintiffs allege charges against Defendants for trademark infringement, unfair competition, and breach of contract.  Plaintiffs are seeking a preliminary injunction to enforce their non-compete covenant and other post-termination obligations.

**II.   Standard**

The availability of injunctive relief is a procedural question that is governed by federal law.  *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98 (6th Cir. 1991).  The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a preliminary injunction:

1. whether the movant has shown a strong or substantial likelihood of success on the merits;
2. whether the movant has demonstrated irreparable injury;
3. whether the issuance of a preliminary injunction would cause substantial harm to others; and
4. whether the public interest is served by the issuance of an injunction.

*Parker v. U. S. Dept. of Agric.*, 879 F.2d 1362, 1367 (6th Cir. 1989).

The foregoing factors should balanced.  *In re DeLorean Motor Co.*, 755 F.2d 1223,

1229 (6th Cir. 1985). Where the three factors other than the likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation. *Id.* at 1230. Alternatively, the court may also issue a preliminary injunction if the movant "at least shows serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985) (citations omitted).

A plaintiff must always show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citations omitted). Monetary damages, however substantial, do not constitute irreparable harm. *Id.* at 90.

Irreparable injury based on financial loss alone will only be found where the potential economic loss is so great as to threaten the existence of the movant's business or "financial ruin" will result. *Performance Unlimited, Inc. v. Questar Pub., Inc.*, 52 F.3d 1373, 1382-83 (6th Cir. 1995). If money damages can compensate the moving party, a preliminary injunction is not appropriate.

**III.   Analysis**

    **A.   Likelihood of Success on the Merits**

Plaintiffs argue that the covenant not to compete in the Agreement is valid and

enforceable. Defendants never filed a response. In their letters to the Court, however, they do not seem to dispute the reasonableness of the non-compete covenant. Rather, they claim that they are not in a financially viable position to comply with it.

A party is not required to prove its case in full at a preliminary injunction hearing. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A plaintiff must, however, "show more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). It is sufficient that the plaintiff raise questions going to the merits "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.*

Michigan Law explicitly authorizes agreements not to compete as long as they are reasonable. The statute states:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of the employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

Mich. Comp. Laws § 445.774a(1). In addition to examining the reasonableness of the clause's duration, geographic scope, and type of employment prohibited, courts also consider the reasonableness of the competitive business interests justifying the clause. *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 919 (Mich. Ct. App. 2006).

In terms of duration, Michigan courts have upheld non-compete agreements covering time periods of six months to five years. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007). For geographic

6

scope, the "guiding principle is that such geographic limitations "must be tailored so that the scope of the agreement is no greater than reasonably necessary to protect the employer's legitimate business interests." Id.

In assessing the type of employment prohibited, the Michigan Court of Appeals determined:

> Because a prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. To be reasonable in relation to an employer's competitive business interest, a restrictve covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill.

*St. Clair Med.*, 715 N.W.2d at 919 (internal citations omitted). Courts find it reasonable to protect legitimate interests such as trade secrets, confidential information, customer lists, good will, or cost factors and pricing. *Certified Restoration*, 511 F.3d at 547-48.

In this case, the covenant not to compete is limited in its duration to two years from the date that the Agreement terminated or when Defendants begin to comply, whichever is later. This time-period is well within the generally accepted duration for reasonable non-compete provisions. The covenant not to compete in this case is also limited in its geographical scope to a ten-mile radius from the premises where Defendants' franchise was and a five-mile radius from any other of Plaintiffs' franchises. The duration and geographical scope of the Agreement's covenant not to compete are limited to serve the legitimate goal of preventing unfair competition with Plaintiffs' other franchises and any potential future franchise at the location where Defendants' franchise terminated.

Plaintiffs submitted the declaration of Meredith Flynn, Plaintiffs' Vice President of Financial Services and Franchise Compliance. Flynn states:

> These covenants against competition are necessary to allow the public's association of the former franchisee with [Plaintiffs'] brands to dissipate; to prevent the former franchisee from continuing to use [Plaintiffs'] confidential information and know-how after the franchise relationship ends; to maintain [Plaintiffs'] goodwill in the marketplace (as [Plaintiffs] can no longer control the quality of the products and services offered by the former franchisee who continues to be associated in the public's eye with Plaintiffs); to prevent the former franchisee from trading off of the goodwill established under the Insty-Prints brand, which belongs to [Plaintiffs]; to protect the viability of [Plaintiffs'] franchise system; and to allow [Plaintiffs] to refranchise the territory if it wishes.

(Meredith Flynn Decl. ¶ 10, Oct. 17, 2011.)

Plaintiffs have presented sufficient evidence to demonstrate a strong likelihood that the franchise agreement's non-competition clause is enforceable. Plaintiffs have a reasonable competitive interest in preventing Defendants from using Plaintiffs' customer base, goodwill, and confidential information Defendants acquired as Plaintiff's franchisee to gain a competitive advantage. *Certified Restoration*, 511 F.3d at 549. Moreover, Defendants have not offered any argument or evidence that the non-compete clause is unreasonable. This Court finds that Plaintiffs have demonstrated a likelihood of success on the merits.[1]

### B. Irreparable Harm

---

[1] Plaintiffs' motion focuses solely on Defendants' breach of the covenant not to compete and because this Court finds that Plaintiff has a high likelihood of success on the merits of its breach of contract claim, this Court need not determine whether Plaintiffs have a likelihood of success on their trademark infringement and unfair competition claims.

The Sixth Circuit has held that the loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. *Certified Restoration*, 511 F.3d at 550; *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). "Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer*, 973 F.2d at 512.

These are the exact injuries that Plaintiffs will suffer if Defendants are allowed to continue to breach the Agreement's covenant not to compete. This factor weighs in Plaintiffs' favor.

C.  **Harm to Others**

In this case, there is no indication that a preliminary injunction enforcing the terms of the Agreement between Plaintiffs and Defendants would cause any harm to third parties. Courts also look at the balance of hardship between the parties. *Superior Consulting, Inc. V. Walling*, 851 F.Supp. 839, 848 (E.D. Mich. 1994) (Cohn, J.).

Defendants state that they do not have the financial resources to comply with the post-termination obligations and that a preliminary injunction would cause them to file bankruptcy. Although Defendants may encounter substantial economic hardship if this Court issues a preliminary injunction, the Court recognizes that Defendants voluntarily entered into the Agreement with Plaintiffs, were fully aware of the provisions they agreed to, and intentionally breached the agreement by ceasing to make the royalty payments and subsequently refusing to comply with the non-compete covenant and post-termination obligations. See *Kelly Services v. Eidnes*, 530 F. Supp. 2d 940, 952 (E.D. Mich. 2008) (Feikens, J.) (finding that the defendant had "brought this harm upon

9

herself" by breaking the agreement and risking that the plaintiff would enforce the non-compete provision).

The damage to Defendants by an injunction is limited in time and scope, as they are free to operate a print and imaging business outside the ten-mile radius of their former location and, in two years, can operate that business anywhere they so choose.

There is no harm to third parties and although this Court is not unsympathetic to Defendants financial condition, the Court cannot ignore the reasonable contractual terms the parties negotiated and the fact that Defendants have brought the economic harm upon themselves by failing to comply with their contractual obligations.

### D. Public Interest

The Sixth Circuit has held that enforcement of contractual duties is in the public interest. *Certified Restoration*, 511 F.3d at 551. This factor weighs in favor of Plaintiffs.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is GRANTED.

IT IS HEREBY ORDERED:

1. Defendants must immediately cease and refrain from having any direct or indirect interest as an owner (whether of record, beneficially, or otherwise), investor, partner, director, officer, employee, consultant, representative, or agent in any Competitive Business (as defined in the parties' Franchise Agreement) within ten (10) miles of their former Insty-Prints location at 659 Appleby Road, Fayetteville, Arkansas, or within five (5) miles of any other Allegra franchised

center, for a period of two years from the date of this order;

2. Defendants are prohibited from:

    a. Directly or indirectly at any time or in any manner identifying themselves or any business as a current or former Insty-Prints center or as one of Allegra's current or former franchise owners;

    b. Using any Insty-Prints Mark, any colorable imitation of an Insty-Prints Mark, or other indicia of an Insty-Prints center in any manner or for any purpose;

    c. Using for any purpose any trade name, trade or service mark, or other commercial symbol that indicates or suggests a connection or association with Allegra;

3. Defendants must immediately deliver to Allegra, at defendants' expense, all signs, sign-faces, sign-cabinets, marketing materials, forms and other materials containing any Insty-Prints Mark or otherwise identifying or relating an Insty-Prints center that Allegra requests and/or allow Allegra, without liability to defendants or third parties, to remove these items from defendants' center;

4. Defendants must immediately deliver to Allegra all customer lists of Defendants' former Insty-Prints center;

5. Defendants must immediately and at their own expense make the alternations specified by Allegra to distinguish their former Insty-Prints center clearly from its former appearance and from other Insty-Prints centers in order to prevent public confusion;

6. Defendants must immediately notify the telephone company and all

telephone directory publishers of the termination of defendants' right to use any telephone, facsimile or other numbers and telephone directory listings associated with any Mark, including telephone number (479) 443-7500; to immediately authorize the transfer of these numbers and directory listings to Allegra or its designee; and/or at Allegra's direction, to immediately instruct the telephone company to forward all calls made to the numbers to numbers specified by Allegra;

7. Defendants must immediately cease using any of Allegra's Confidential Information (including computer software or similar technology and digital passwords and identifications that Allegra has licensed to defendants or that otherwise are proprietary to Allegra or its franchise system) in any business or otherwise and to immediately return to Allegra all copies of the Operations Manual and any other confidential materials that Allegra loaned to defendants;

8. Defendants are prohibited from:

    a. Using the Insty-Prints Marks, or any trademark, service mark, logo, or trade name that is confusingly similar to the Insty-Prints Marks;

    b. Otherwise infringing upon the Insty-Prints Marks or using any similar designation, alone or in combination with any other components;

    c. Passing off any products or services as those of Allegra Network, Allegra Holdings or Allegra Network's authorized franchisees;

    d. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of defendants' business, products or services;

    e. Causing a likelihood of confusion or misunderstanding as to

defendants' affiliation, connection or association with Allegra Network, Allegra Holdings or Allegra Network's franchisees, or with any of Allegra's products or services; and

f. Unfairly competing with Allegra Network, Allegra Holdings or Allegra Network's franchises, in any manner;

9. Plaintiffs must file with the Court and serve upon Defendants, in twenty-one (21) days from the entry of this order, on or about September 10, 2012, a written report setting forth in detail the manner in which Defendants have or have not complied with this injunction order.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 20, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 20, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager